Diane Stolbach, Esq. (1439)
KRAEMER BURNS, P.A.
675 MORRIS AVENUE
SPRINGFIELD, NEW JERSEY 07081
(973) 912-8700
E-Mail: dstolbach@kraemerburns.com
Attorneys for Plaintiff
DEUTSCHE LEASING USA, INC.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEUTSCHE LEASING USA, INC., assignee of Bobst Equipment Finance Company | Civil Action No. _____ |
| Plaintiff, | Hon. |
| v. | **VERIFIED COMPLAINT** |
| QPS DIE CUTTERS & FINISHERS CORPORATION and ACCURATE DIE-CUTTERS, INC., | |
| Defendants. | |

Plaintiff, Deutsche Leasing USA, Inc. ("DLUSA"), assignee of Bobst Equipment Finance Company ("BEFCO"), by way of complaint against defendants QPS Die Cutters & Finishers Corporation ("QPS"), and Accurate Die-Cutters, Inc. ("Accurate"), says:

## THE PARTIES

1.  Plaintiff DLUSA is a Delaware corporation with its principal place of business at 190 S. LaSalle Street, Suite 2150, Chicago, IL 60603. DLUSA is the assignee of Bobst Equipment Finance Company having its principal office at 146 Harrison Avenue, Roseland, NJ 07068. Pursuant to a March 21, 2008 Asset Purchase Agreement between DLUSA and BEFCO, DLUSA acquired a portfolio of financing transactions and leases including large commercial equipment from BEFCO, including the financing transaction with QPS.

2.  Defendant QPS is a New Jersey corporation with its principal place of business located at 475 Bloy Street, Hillside, New Jersey 07205 ("Defendant's Facility").

3.  Defendant, Accurate Die-Cutters, Inc. is located at 475 Bloy Street, Hillside, New Jersey 07205.

## JURISDICTION AND VENUE

4.  The United States District Court has jurisdiction over the subject matter of this civil action under 28 U.S.C. §1332(a) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the parties.

5.  Venue lies in the District of New Jersey pursuant to 28 U.S.C. §1391(a).

## FIRST COUNT

6. In 2003 and 2004, QPS and BEFCO entered into two financing transactions for the purchase by QPS of two large pieces of commercial equipment described below as the Media Equipment and the Mistral Equipment.

7. BEFCO and QPS entered into a Security Agreement and Promissory Note dated as of December 3, 2003 and related documents (the "Media Financing Transaction"), pursuant to which BEFCO agreed to lend QPS the sum of $280,000.00 to finance the purchase of the following equipment: Bobst Model Media 100-111 Version A-2, High Speed Folding Carton, Folding and Gluing Machine, Serial No. 0341 152 01, designed for processing of ordinary folding cartons as well as with optional equipment; crashlock bottom and various other blank styles, together with equipment as specified in Bobst Group Inc. Proposal No. 7488-B dated November 25, 2003 (the "Media Equipment"). A copy of the Media Security Agreement is annexed hereto as Exhibit A.

8. The Media Security Agreement granted BEFCO a security interest in the Media Equipment. Simultaneously with the execution of the Media Security Agreement and the Media Promissory Note, UCC-1 financing statements evidencing BEFCO's security interest in the Media Equipment were duly recorded. BEFCO obtained a purchase money security interest in the Media Equipment.

3

9.    Thereafter, QPS defaulted in its obligations under the Media Financing Transaction.

10.  DLUSA, as assignee of BEFCO, and QPS entered into a Modification Agreement dated November 24, 2009 (the "2009 Media Modification Agreement"), in which, inter alia, QPS' obligations were restructured.    A copy of the 2009 Media Modification Agreement is attached hereto as Exhibit B.

11.  Pursuant to the 2009 Media Modification Agreement, QPS executed a Restated Note in which QPS agreed to pay DLUSA the sum of $126,715.08, in fifty-five (55) monthly payments of interest and principal in the amount of $2,708.32.  A copy of the Media Restated Note is annexed hereto as Exhibit C.

12.  Pursuant  to  paragraph  13  of  the  2009  Media Modification Agreement, the terms and conditions of the Media Financing Transaction remain unchanged and in full force and effect, except as expressly modified therein.

13.  Section 12.1 of the Media Security Agreement provides, among other things, that QPS' failure to make any payment due under the Media Promissory Note or Media Security Agreement constitutes an "Event of Default".

14.  Section 12.2 of the Media Security Agreement provides, among other things, that upon the occurrence of an Event of Default:

> ... BEFCO shall be entitled to pursue any
> and all available remedies.    Without

4

> limiting the foregoing, BEFCO may, at its
> option, declare the Loan and all other
> obligations then owing by the [Debtor] to
> BEFCO immediately due and payable and BEFCO
> shall have the rights and remedies of a
> secured party under the Uniform Commercial
> Code and other applicable laws of the State
> of New Jersey, and it shall then be lawful,
> and BEFCO is hereby authorized and
> empowered, with the aid and assistance of
> any person or persons to enter any premises
> where the Collateral or any part thereof may
> be situated and to dissemble and/or remove
> and/or to render same unusable and to sell
> or dispose of such Collateral ...

15.  The Media Security Agreement provides in Section 14.1 that it shall be "governed and interpreted in accordance with the laws of the State of New Jersey".  Furthermore, QPS waived its right to a jury trial and agreed that any claim or dispute arising out of the Media Security Agreement or Media Restated Note be adjudicated in and consented to the jurisdiction of the Courts of the State of New Jersey.

16.  The 2009 Media Modification Agreement, Media Security Agreement and Media Restated Note also provide that DLUSA is entitled to recover expenses of collection, including attorneys' fees.

17.  DLUSA has fully and faithfully performed all of the terms and provisions required of it under the 2009 Media Modification Agreement.

18.  Defendant QPS is in default of the 2009 Media Modification Agreement, Media Security Agreement and Media

Restated Note, in that, among other things, QPS has failed to make the monthly payments when due thereunder. As of July 5, 2011, the past due total, exclusive of attorneys' fees, is $20,908.23 under the Media Modification Agreement.

19. Pursuant to the 2009 Media Modification Agreement, DLUSA has declared the full amount immediately due and payable and has demanded possession of the Media Equipment.

20. Despite DLUSA's demand, defendant QPS has failed and refused to pay the amount due and owing under the 2009 Media Modification Agreement, the Media Security Agreement and the Media Restated Note, and has refused to surrender possession of the Media Equipment.

21. Pursuant to paragraph 6 of the 2009 Media Modification Agreement, QPS agreed that:

> In the event Debtor is in default of its
> obligations under this Agreement and DL USA
> is entitled to possession of the Equipment
> securing the Financing Transaction, Debtor
> acknowledges and agrees that:  (a) DL USA
> shall not be required to post a bond or
> other security; (b) DL USA and/or its
> designated representatives are permitted to
> enter the facility where the Equipment is
> located for the purpose of dismantling and
> removing the Equipment; and (c) Debtor will
> cooperate with and assist DL USA and its
> designated representatives in connection
> with the dismantling and removal of the
> Equipment.

22. DLUSA is entitled to possession of the Media Equipment; however, defendant QPS has wrongfully refused to

deliver it to plaintiff; and has wrongfully detained it.   The
Media Equipment is currently located at Defendant's Facility.

23.   The outstanding balance as of June 30, 2011 QPS owes
DLUSA on the Media Restated Note is $109,092.82, exclusive of
attorneys' fees.

24.   In addition, QPS owes DLUSA all reasonable costs of
collection,   including   reasonable   attorneys'   fees   and   all
expenses of retaking the Media Equipment.

25. Despite plaintiff's demand, defendants have failed and
refused to pay QPS' obligations to plaintiff.

WHEREFORE, plaintiff, Deutsche Leasing USA, Inc., assignee
of Bobst Equipment Finance Company, demands judgment against
defendants, QPS Die Cutters & Finishers Corporation for:

A.   Possession of the Media Equipment;

B.   compensatory damages;

C.   legal fees and expenses;

D.   interest;

E.   costs of suit; and

F.   such other and further relief that court deems
equitable and just.

## COUNT II

26.   Plaintiff repeats the allegations of Paragraphs 1
through 25 as if set forth herein at length.

7

27. BEFCO and QPS entered into a second financing transaction for the financing of a Bobst Model Mistral executing a Security Agreement and Promissory Note dated as of November 4, 2004 and related documents (the "Mistral Financing Transaction"), pursuant to which BEFCO agreed to lend QPS the sum of $531,000.00 to finance the purchase of the following equipment: Bobst Model Mistral 110 A-2, CS, Serial No. 0356 007 04, Universal Folder Gluer designed for processing straight-line boxes with prebreaking of 1st and 3rd crease and standard crash-lock bottom boxes with prebreaking of 1st and 3rd crease, together with equipment as specified in Bobst Group Inc. Proposal No. 8079-A dated October 22, 2004 (the "Mistral Equipment"). A copy of the Mistral Security Agreement is annexed hereto as Exhibit D.

28. The Mistral Security Agreement granted BEFCO a security interest in the Mistral Equipment. Simultaneously with the execution of the Mistral Security Agreement and the Mistral Promissory Note, UCC-1 financing statements evidencing BEFCO's security interest in the Mistral Equipment were duly recorded. BEFCO obtained a purchase money security interest in the Mistral Equipment.

29. Thereafter, QPS defaulted in its obligations under the Mistral Financing Transaction.

8

30. DLUSA, as assignee of BEFCO, and QPS entered into a Modification Agreement dated November 25, 2009 (the "2009 Mistral Modification Agreement"), in which, inter alia, QPS' obligations were restructured. A copy of the 2009 Mistral Modification Agreement is attached hereto as Exhibit E.

31. Pursuant to the 2009 Mistral Modification Agreement, QPS executed a Restated Note in which QPS agreed to pay DLUSA the sum of $294,370.91 with fifty-five (55) monthly payments of interest and principal in the amount of $6,291.68. A copy of the Mistral Restated Note is annexed hereto as Exhibit F.

32. Pursuant to paragraph 13 of the 2009 Mistral Modification Agreement, the terms and conditions of the Mistral Financing Transaction remain unchanged and in full force and effect, except as expressly modified therein.

33. Section 12.1 of the Mistral Security Agreement provides, among other things, that QPS' failure to make any payment due under the Mistral Promissory Note or Mistral Security Agreement constitutes an "Event of Default".

34. Section 12.2 of the Mistral Security Agreement provides, among other things, that upon the occurrence of an Event of Default:

> ... BEFCO shall be entitled to pursue any and all available remedies. Without limiting the foregoing, BEFCO may, at its option, declare the Loan and all other obligations then owing by the [Debtor] to BEFCO immediately due and payable and BEFCO

9

> shall have the rights and remedies of a
> secured party under the Uniform Commercial
> Code and other applicable laws of the State
> of New Jersey, and it shall then be lawful,
> and BEFCO is hereby authorized and
> empowered, with the aid and assistance of
> any person or persons to enter any premises
> where the Collateral or any part thereof may
> be situated and to dissemble and/or remove
> and/or to render same unusable and to sell
> or dispose of such Collateral ...

35. The Mistral Security Agreement provides in Section 14.1 that it shall be "governed and interpreted in accordance with the laws of the State of New Jersey". Furthermore, QPS waived its right to a jury trial and agreed that any claim or dispute arising out of the Mistral Security Agreement or Mistral Restated Note be adjudicated in and consented to the jurisdiction of the Courts of the State of New Jersey.

36. The 2009 Mistral Modification Agreement, Mistral Security Agreement and Mistral Restated Note also provide that DLUSA is entitled to recover expenses of collection, including attorneys' fees.

37. DLUSA has fully and faithfully performed all of the terms and provisions required of it under the 2009 Mistral Modification Agreement.

38. Defendant QPS is in default of the 2009 Mistral Modification Agreement, Mistral Security Agreement and Mistral Restated Note, in that, among other things, QPS has failed to make the monthly payments when due thereunder. As of July 5,

2011, the past due total, exclusive of attorneys' fees, is $48,571.77.

39. DLUSA has declared the full amount immediately due and payable and has demanded possession of the Mistral Equipment.

40. Despite DLUSA's demand, defendant QPS has failed and refused to pay the amount due and owing under the 2009 Mistral Modification Agreement, the Mistral Security Agreement and the Mistral Restated Note, and has refused to surrender possession of the Mistral Equipment.

41. Pursuant to paragraph 6 of the 2009 Mistral Modification Agreement, QPS agreed that:

> In the event Debtor is in default of its obligations under this Agreement and DL USA is entitled to possession of the Equipment securing the Financing Transaction, Debtor acknowledges and agrees that: (a) DL USA shall not be required to post a bond or other security; (b) DL USA and/or its designated representatives are permitted to enter the facility where the Equipment is located for the purpose of dismantling and removing the Equipment; and (c) Debtor will cooperate with and assist DL USA and its designated representatives in connection with the dismantling and removal of the Equipment.

42. DLUSA is entitled to possession of the Mistral Equipment; however, defendant QPS has wrongfully refused to deliver it to plaintiff; and has wrongfully detained it. The Mistral Equipment is currently located at Defendant's Facility.

11

43.  The outstanding balance as of June 30, 2011 that QPS owes DLUSA on the Mistral Restated Note is $253,432.74, exclusive of attorneys' fees.

44.  In addition, QPS owes DLUSA all reasonable costs of collection, including reasonable attorneys' fees and all expenses of retaking the Mistral Equipment.

45.  Despite plaintiff's demand, defendants have failed and refused to pay QPS' obligations to plaintiff.

WHEREFORE, plaintiff, Deutsche Leasing USA, Inc., assignee of Bobst Equipment Finance Company demands judgment against defendant, QPS Die Cutters & Finishers Corporation for:

A.  Possession of the Mistral Equipment;

B.  compensatory damages;

C.  legal fees and expenses;

D.  interest;

E.  costs of suit; and

F.  such other and further relief that court deems equitable and just.

## COUNT III

46.  Plaintiff repeats the allegations of Paragraphs 1 through 45 as if set forth herein at length.

47.  Accurate executed a Guaranty of QPS' obligations under the Media Financing Transaction. A copy of the Accurate Guaranty is attached hereto as Exhibit G.

12

48. Accurate executed a Guarantor's Consent to the Media Modification Agreement. A copy of the Guarantor's Media Consent is annexed hereto as Exhibit H.

49. Pursuant to the Media Guaranty, Accurate agreed to be liable for any costs and expenses including reasonable attorneys' fees incurred in enforcing the terms of the Media Transaction or the Media Guaranty.

50. Defendant Accurate is in breach of the Media Guaranty obligation.

51. The Media Guaranty provides that it shall be governed by and construed in accordance with the laws of the State of New Jersey.

52. Accurate executed a Guaranty of QPS' obligations under the Mistral Financing Transaction. A copy of the Mistral Guaranty is attached hereto as Exhibit I.

53. Accurate executed a Guarantor's Consent to the Mistral Modification Agreement. A copy of the Guarantor's Mistral Consent is annexed hereto as Exhibit J.

54. Pursuant to the Mistral Guaranty, Accurate agreed to be liable for any costs and expenses including reasonable attorneys' fees incurred in enforcing the terms of the Mistral Transaction or the Mistral Guaranty.

55. Defendant Accurate is in breach of the Mistral Guaranty obligation.

13

56. The Mistral Guaranty provides that it shall be governed by and construed in accordance with the laws of the State of New Jersey.

57. Despite plaintiff's demand, defendants have failed and refused to pay QPS' obligations to plaintiff or deliver possession of the Mistral Equipment or Media Equipment to plaintiff.

WHEREFORE, plaintiff, Deutsche Leasing USA, Inc., assignee of Bobst Equipment Finance Company demands judgment against defendants, QPS Die Cutters & Finishers Corporation and Accurate Die-Cutters, Inc. for:

A. Possession of the Mistral Equipment and the Media Equipment;

B. compensatory damages;

C. legal fees and expenses;

D. interest;

E. costs of suit; and

F. such other and further relief that court deems equitable and just.

> KRAEMER BURNS, P.A.
> Attorneys for Plaintiff
>
> By:/s/Diane Stolbach
>        Diane Stolbach

Dated: July 7, 2011

14

## LOCAL RULE 11.2 CERTIFICATION

We hereby certify pursuant to Local Civil Rule 11.2 that, to our knowledge, that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

KRAEMER BURNS, P.A.
Attorneys for Plaintiff

By:/s/Diane Stolbach
Diane Stolbach

Dated:  July 7, 2011

16

VERIFICATION

MARK BELANGER, of full age, duly certifies as follows:

1.    I am the _Head of Risk_ of the plaintiff in the within Complaint and am familiar with all of the facts contained herein.

2.    I have read the attached Verified Complaint and to the best of my knowledge the allegations of fact contained therein are true.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Mark Belanger

Dated:  July _6_, 2011

16